T.C. Memo. 2021-69

UNITED STATES TAX COURT

CAROL E. HOLLIDAY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23296-17.                              Filed June 7, 2021.

<u>Steven L. Powell</u>, for petitioner.

<u>Christina D. Sullivan</u>, <u>Gordon P. Sanz</u>, and <u>Yvette Nunez</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated August 7, 2017, respondent

determined the following:[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2014 | [1]$26,432 | [2]$5,286 |

[1] Respondent increased this deficiency to $44,939 by filing a motion for leave to file amendment to answer pursuant to Rule 41(a), which we granted on June 3, 2019.

[2] Respondent conceded this penalty.

The issue for decision is whether settlement proceeds petitioner received in 2014 constitute taxable income.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference. Petitioner resided in Texas when she timely filed her petition.

I. Background

Two lawsuits are central to this case. The first is petitioner's divorce proceeding, in which she was represented by J. Beverly and his law firm (divorce attorney and malpractice defendants, respectively). The second is petitioner's malpractice lawsuit against her divorce attorney, in which she was represented by Lance Kassab (malpractice attorney).

A. Petitioner's Divorce Proceedings

In March 2010 petitioner's former spouse filed for divorce. As part of the divorce proceedings, petitioner and her divorce attorney participated in mediation.

[*3] It resulted in petitioner's executing a mediated settlement agreement. Petitioner objected to the mediated settlement agreement, but her objections were not sustained by the divorce court.

In April 2012 the divorce court entered the Agreed Final Decree of Divorce between petitioner and her former spouse.

In May 2012 petitioner's divorce attorney filed a motion for a new trial and stated that petitioner received $74,864 less than her equal share of the community estate. The motion for a new trial was denied. Petitioner's divorce attorney told petitioner he would appeal, but he failed to do so.

B. Petitioner's Malpractice Lawsuit

In October 2013 petitioner filed a malpractice lawsuit against her divorce attorney. She claimed that her divorce attorney's representation constituted negligence and gross negligence and that he breached the duty of fair dealing and his fiduciary duties "by influencing * * * [her] to mediate and enter into a transaction that was not fair to * * * [her] under the circumstances" and by not pursuing an appeal. She later amended the malpractice petition in July and August 2014 to add claims for deceptive trade practices, treble damages, and attorney's fees.

To support her claims, petitioner included facts in the malpractice petition about her former spouse's retirement plan, the divorce attorney's alleged failures,

**[*4]** and her stressful experience during the mediation and other parts of the divorce litigation. Her August 2014 amendment to the malpractice petition added facts to support her deceptive trade practices claim, including that her divorce attorney failed to properly plead claims related to her former spouse's fraud on the marital estate.

She sought damages for "pecuniary and compensatory losses", including "damages for past and future mental anguish, suffering, stress, anxiety, humiliation, and loss of ability to enjoy life", as well as punitive damages and disgorgement of the attorney's fees she paid in the divorce proceeding, resulting from the malpractice defendants' conduct.

In October 2014 petitioner and the malpractice defendants entered into a settlement agreement. It recited that "while there remain significant disagreements as to the merit of the claims and allegations asserted by the Parties to this lawsuit, the Parties have agreed to compromise and settle such claims and allegations, without any admission of fault or liability on the part of any party." Under the section "Consideration", the malpractice defendants agreed to pay petitioner $175,000 "[i]n consideration for the mutual promises and obligations set forth in this Release". Under the section "Release", the parties released each other from all claims related to the malpractice lawsuit "in exchange for the * * * [settlement proceeds]". All claims included those "of whatever kind or character, known or

[*5] unknown * * * which * * * [petitioner] may have against * * * [malpractice defendants] arising out of or related to the * * * [malpractice lawsuit]." The malpractice defendants did not admit liability or fault in the settlement agreement, and the parties did not allocate any of the settlement proceeds toward any particular claim or type of damages.

Petitioner received the settlement proceeds of $175,000, from which she paid her malpractice attorney's $73,500 fee; this was effected by the malpractice attorney's receiving the settlement check, deducting his fee, and transferring the remaining $101,500 to petitioner.[2]

## II. Petitioner's Tax Return and Respondent's Notice of Deficiency

On her 2014 Form 1040, U.S. Individual Income Tax Return, line 21, petitioner reported "[o]ther income" of zero. She acknowledged the receipt of $101,500 through an attached Form 1099-MISC Summary and a "Line 21 Statement" on which she reported "Other Income from Box 3 of 1099-Misc" of $101,500. But the Line 21 Statement then subtracts $101,500 with the description "Misclassification of Lawsuit recovery of marital assets", resulting in total other income of zero.

---

[2] Petitioner's malpractice attorney testified that he was "99 percent sure the * * * [malpractice defendants' malpractice] insurance company paid the entire $175,000"; we treat payment here as if the insurance company paid the malpractice defendants who in turn paid petitioner. See Old Colony Tr. Co. v. Commissioner, 279 U.S. 716 (1929); Bintliff v. United States, 462 F.2d 403, 408 (5th Cir. 1972).

[*6]   In the notice of deficiency, respondent determined that petitioner failed to include gross income of $101,500 on the basis of the Form 1099-MISC, Miscellaneous Income, issued by her malpractice attorney.  After reviewing the settlement agreement in preparation for trial of this case, respondent amended his answer, stating that all $175,000 of the settlement proceeds should have been reported on petitioner's 2014 Form 1040 with a corresponding miscellaneous itemized deduction of $73,500 for the payment to her malpractice attorney.  This amendment resulted in the increased deficiency of $44,939.

OPINION

Petitioner argues that the settlement proceeds are a nontaxable return of capital because they compensate her for the portion of her marital estate that she "was rightfully and legally entitled to, but did not receive, due to the legal malpractice of * * * [her divorce attorney]."[3]  Respondent counters that the settlement proceeds are taxable income because they compensate petitioner for the alleged failings of her divorce attorney and are not excluded from gross income.

---

[3] Petitioner does not argue that the settlement proceeds should be excluded from income under sec. 104(a), which deals with compensation for personal injury, or under sec. 1041, which deals with transfers of property between spouses incident to divorce.  She maintains that the settlement proceeds represent a nontaxable return of capital.

**[\*7]** I.  Burden of Proof

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous.[4]  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner has not contended and the record does not show that the burden of proof should shift to respondent under section 7491(a).  See Higbee v. Commissioner, 116 T.C. 438, 442 (2001).  Petitioner therefore bears the burden of showing that the settlement proceeds represent what she claims.  See Milenbach v. Commissioner, 318 F.3d 924, 933 (9th Cir. 2003), aff'g on this issue 106 T.C. 184 (1996); see also Espinoza v. Commissioner, 636 F.3d 747, 749 (5th Cir. 2011) (reiterating that a taxpayer claiming an exclusion of settlement proceeds from income "bears the burden of proving that the exclusion is proper"), aff'g T.C. Memo. 2010-53; Simpson v. Commissioner, 141 T.C. 331, 339 (2013) (observing that taxpayers generally bear the burden of proving that settlement proceeds "fall

---

[4] In cases involving unreported income, the U.S. Court of Appeals for the Fifth Circuit, to which any appeal in this case would ordinarily lie, see sec. 7482(b)(1)(A), has held that the Commissioner must establish "some predicate evidence" connecting the taxpayer with the income-producing activity or demonstrating that the taxpayer actually received unreported income for the presumption of correctness to attach to the notice of deficiency, see Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), aff'g in part, rev'g and remanding in part T.C. Memo. 1990-68.

But the parties do not dispute petitioner's receipt of the $175,000; they dispute its tax treatment.  Petitioner reported $101,500 of the settlement proceeds on the Form 1099-MISC Summary and "Line 21 Statement" attached to her 2014 Form 1040.  And the full $175,000 settlement payment is evidenced by the settlement agreement and the parties' stipulation of that full amount.

**[\*8]** squarely within the requirements for any exclusion from gross income"), aff'd, 668 F. App'x 241 (9th Cir. 2016).

Respondent bears the burden of proof with respect to the increase in the deficiency. See Rule 142(a)(1).

## II.  Settlement Proceeds:  Taxable Income or Nontaxable Recovery of Capital

### A.  Legal Background

Section 61(a) defines gross income as "all income from whatever source derived" and broadly encompasses any accession to a taxpayer's wealth. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).  Consistent with the broad definition is the corollary that "exclusions from income must be narrowly construed."  Commissioner v. Schleier, 515 U.S. 323, 328 (1995) (quoting United States v. Burke, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment)); see Wesson v. United States, 48 F.3d 894, 898 (5th Cir. 1995).  And "as a general rule, when a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee."  Commissioner v. Banks, 543 U.S. 426, 430 (2005).

Generally, recovery of capital is not income.  See United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 98 (1936); Milenbach v. Commissioner, 318 F.3d at 933 (noting that proceeds that represent compensation for lost value or capital generally are not taxable); Freeman v. Commissioner, 33 T.C. 323, 327

[*9] (1959) (noting that proceeds received "as the replacement of capital destroyed or injured rather than for lost profits" are a return of capital and not taxable"); see also Wesson v. United States, 48 F.3d at 899 (discussing that compensatory damages for personal injuries are excluded from gross income "because, in effect, they restore a loss to capital" (emphasis omitted) (quoting Hawkins v. United States, 30 F.3d 1077, 1083 (9th Cir. 1994))).

Whether a payment received in settlement of a claim represents a recovery of capital depends on the nature of the claims that were the basis for the settlement. See Spangler v. Commissioner, 323 F.2d 913, 916 (9th Cir. 1963), aff'g T.C. Memo. 1961-341; see also Sager Glove Corp. v. Commissioner, 36 T.C. 1173, 1180 (1961) ("The taxability of the proceeds of a lawsuit, or of a sum received in settlement thereof, depends upon the nature of the claim and the actual basis of recovery."), aff'd, 311 F.2d 210 (7th Cir. 1962). We have held previously that "an amount paid to a taxpayer in order to compensate the taxpayer for a loss that the taxpayer suffered because of the erroneous advice of the taxpayer's tax consultant generally is a return of capital and is not includible in the taxpayer's income." Cosentino v. Commissioner, T.C. Memo. 2014-186, at *31; see also Clark v. Commissioner, 40 B.T.A. 333, 335 (1939); Concord Instruments Corp. v. Commissioner, T.C. Memo. 1994-248, 1994 WL 232364, at *24-*25.

[*10] To determine whether a settlement represents lost profit or lost value, we ask: "[I]n lieu of what was the . . . settlement awarded?" Green v. Commissioner, 507 F.3d 857, 867 (5th Cir. 2007) (quoting Srivastava v. Commissioner, 220 F.3d 353, 365 (5th Cir. 2000), aff'g in part, rev'g and remanding in part T.C. Memo. 1998-362), aff'g T.C. Memo. 2005-250. This is a question of fact. Id. at 866-867. "Ultimately, the character of the payment hinges on the payor's dominant reason for making the payment." Id. at 868. "We first look to the language of the agreement itself for indicia of purpose", focusing on "the origin and characteristics of the claims settled * * * [in that agreement]". Id. at 867 (quoting Pipitone v. United States, 180 F.3d 859, 862 (7th Cir. 1999)). Where the agreement does not mention purpose, the Court may look at other facts that reveal the payor's intent, such as amount paid, evidence adduced at trial, and the factual circumstances that led to the agreement. Id. at 867-868; see also Robinson v. Commissioner, 102 T.C. 116, 126 (1994) (noting that the determination of the nature of the claims settled "is generally made by reference to the settlement agreement in light of the surrounding circumstances"), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995).

B. Petitioner's Settlement Proceeds

The settlement agreement makes clear that the settlement proceeds were in lieu of damages for legal malpractice. The text of the settlement agreement

[*11] indicates its purpose was "to compromise and settle * * * [petitioner's] claims and allegations" against malpractice defendants and that payment "in exchange for" release of claims related to petitioner's lawsuit against the malpractice defendants.

Petitioner argues that the settlement proceeds are only for those claims that involve the marital estate and that they represent compensation for lost value or capital because they "are based on her recovery of the property interest that * * * [she] rightfully should have received from her divorce as her share of the marital estate."[5] But the settlement agreement says that the settlement proceeds are for the release of "all claims * * * of whatever kind or character, known or unknown * * * which * * * [petitioner] may have against * * * [malpractice defendants] arising out of or related to the * * * [malpractice lawsuit]." Petitioner thus asks us to look through the settlement agreement and consider only her claims related to recovery of marital property. We decline to look beyond the plain terms of the settlement

---

[5] Part of petitioner's argument about the nature of the settlement proceeds is based on information from "Plaintiff's Fourth Amended Response to Defendants' Request for Disclosure & Plaintiff's Designation of Expert Witnesses" from petitioner's malpractice lawsuit. Petitioner attached a copy of this disclosure to the joint stipulation of facts as Exhibit 9-P. Respondent objected to its admission, citing petitioner's failure to comply with Rule 143(g), hearsay, and lack of relevance. We sustain respondent's objections and add that, even if petitioner's exhibit were admitted into evidence, it would not help us to allocate the proceeds between excludible and nonexcludible claims.

[*12] agreement, and we conclude that the settlement proceeds were to compensate her for her attorney's malpractice and therefore are taxable.

We recently rejected a similar attempt to recharacterize the settlement of a legal malpractice claim arising from a personal injury lawsuit. In Blum v. Commissioner, T.C. Memo. 2021-18, the taxpayer filed a malpractice claim against her personal injury attorney, resulting in a settlement payment from the personal injury attorney. She asserted that the settlement payment represented a return of capital "in that it compensated her for a loss that she suffered because of the erroneous advice of her lawyers, viz, the nontaxable amount she would have received had she prevailed in her personal injury lawsuit." Id. at *12. Focusing on the text of the settlement agreement, which specified that it was entered into "for the purpose of compromising and settling the disputes", the Court concluded that the settlement payment was not a return of capital to the taxpayer but rather to compensate her "for distinct failings by her former lawyers." Id. at *9, *12.

Petitioner similarly has failed to convince us that the settlement proceeds were meant only to replace her marital property, rather than generally to release the malpractice defendants from the various claims and types of damages listed in the malpractice petition. We therefore conclude that the settlement proceeds do not represent recovery of capital, and we sustain respondent's determination in the

**[\*13]** notice of deficiency that the settlement proceeds are includible in gross

income.[6]

Finally, respondent has met his burden of proof with respect to the increased

deficiency by showing that the $73,500 that yielded the increased deficiency was

received by petitioner as settlement proceeds. The record includes uncontested

evidence (and the parties have stipulated) that the settlement consisted of

$175,000, of which petitioner's malpractice attorney retained $73,500 as a fee for

representing her in the lawsuit. The full amount of the settlement proceeds,

---

[6] Even if petitioner had convinced us that some of the settlement proceeds were meant to replace her purported loss of marital property and that the loss was a nontaxable recovery of capital, she failed to provide a basis upon which we can allocate the settlement proceeds between that hypothetically nontaxable recovery and other taxable amounts. The settlement agreement did not allocate any of the settlement proceeds toward any of the various claims or types of damages. We may "exercise our judgment to make an allocation" of a settlement payment between taxable income and a nontaxable return of capital if the record provides us with a basis for such an allocation. See Estate of Taracido v. Commissioner, 72 T.C. 1014, 1026 (1979). But a taxpayer's "[f]ailure to show the specific amount of the payment allocable to the [excludible] claims * * * results in the entire amount's being presumed not to be excludible." Pipitone v. United States, 180 F.3d 859, 864 (7th Cir. 1991) (quoting Wise v. Commissioner, T.C. Memo. 1998-4, 1998 WL 1705, at \*4); see Lawson v. Commissioner, T.C. Memo. 2015-211, at \*28-\*29 ("Where the agreement is silent as to the basis of the settlement or where the agreement does not specify that the payment was for a reason that a court finds to be nontaxable, this Court has held the settlement payment to be taxable."); see also Espinoza v. Commissioner, 636 F.3d 747, 750-751 (5th Cir. 2011), aff'g T.C. Memo. 2010-53; Green v. Commissioner, 507 F.3d 857, 867-870 (5th Cir. 2007), aff'g T.C. Memo. 2005-250; Estate of Taracido v. Commissioner, 72 T.C. at 1026-1027. And certain elements of the settlement proceeds, such as interest, would not be excludible under any of petitioner's offered theories. See sec. 61(a)(4).

**[\*14]** including the fee petitioner paid her malpractice attorney, is includible in gross income. <u>Commissioner v. Banks</u>, 543 U.S. at 430 (noting that the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee).

Accordingly, we sustain respondent's inclusion of the $175,000 in petitioner's gross income for 2014. Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate decision will be entered for respondent as to the deficiency and for petitioner as to the section 6662(a) penalty</u>.