T.C. Memo. 2014-186

UNITED STATES TAX COURT


GAREY A. COSENTINO AND JO-ANN COSENTINO, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1954-12.                    Filed September 11, 2014.


<u>Arthur G. Jaros, Jr.</u>, for petitioners.

<u>Angela B. Reynolds</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


CHIECHI, <u>Judge</u>:  Respondent determined a deficiency in, and an accu-racy-related penalty under section 6662(a)[1] on, petitioners' Federal income tax (tax) for their taxable year 2007 of $107,885 and $21,577, respectively.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*2]**  The issue remaining for decision is whether certain proceeds that petitioners received during 2007 from the settlement of a lawsuit are includible in their income for their taxable year 2007.  We hold that they are not except to the extent stated herein.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Oregon at the time they filed the petition.

In 2007, petitioners received a payment of $375,000 ($375,000 payment) in settlement of a lawsuit (lawsuit) that they and certain entities[2] had commenced in 2006 by filing a complaint (complaint) in the Circuit Court of the State of Oregon for the County of Marion.[3]  In the complaint, petitioners alleged, inter alia, that Fischer, Hayes & Associates, P.C. (Fischer Hayes), an accounting firm, and certain accountants who worked for that firm (collectively, defendants) were negligent and breached their fiduciary duties to petitioners by advising them to use what petitioners discovered after the fact was an abusive tax shelter (tax-avoidance

_____

[2]Petitioners directly and indirectly wholly owned the entities, G.A.C. Investments, LLC (G.A.C. Investments), and Cosentino Estates, LLC (Cosentino Estates), that joined them in commencing the lawsuit.  At all relevant times, those entities were flowthrough entities for tax purposes.

[3]For convenience, we shall refer only to petitioners when describing the allegations in the complaint.

[*3] plan) in order to dispose of certain commercial rental property (rental property) that G.A.C. Investments owned.

In the complaint, petitioners alleged the following damages totaling $640,749.80:

      a.     Fees paid to Fischer, Hayes and Associates, P.C. * * * of $45,000;

      b.     Costs and losses incurred in connection with the sale and purchase of the Treasury Bonds in the amount of $9,151;

      c.     Federal and states income taxes paid including lost opportunity to use legitimate tax deferral methods under Section 1031 in the total amount of $456,930;[4]

      d.     Interest payable to the Internal Revenue Service in the amount of $18,783.59 and accruing;

      e.     Penalties payable to the Internal Revenue Service in the estimated amount of $89,925;[5]

---

[4]It appears that petitioners made a mathematical error in the complaint in alleging damages for "Federal and states income taxes paid including lost opportunity to use legitimate tax deferral methods under Section 1031 in the total amount of $456,930". That is because petitioners alleged in the complaint that implementing the tax-avoidance plan caused them to incur additional tax of $280,567 and additional State of Oregon (Oregon) income tax of $168,676. The sum of those respective amounts of additional tax and additional Oregon income tax is $449,243, not $456,930. In addition, the parties stipulated that for their taxable years 2002 and 2003 petitioners paid additional tax and additional Oregon income tax totaling $449,243.

[5]Petitioners concede on brief that they in fact paid penalties to the Internal Revenue Service (IRS) totaling only $57,620.

**[*4]**     f.     Interest payable to the State of Oregon in the amount of $12,666.21 and accruing plus additional interest for year 2002 in an amount to be determined; and

     g.     Penalties payable to the State of Oregon in the amount of $8,294.00, plus additional tax shelter penalties, and penalties for year 2002 in an amount to be determined.[6]

The "Fees paid to Fischer, Hayes and Associates, P.C. * * * of $45,000" that petitioners included among the damages alleged in the complaint were fees that they paid to that firm pursuant to a certain fee agreement (petitioners' fee agreement) that petitioners entered into with that firm in return for its advice about how to structure the disposition of the rental property by using the tax-avoidance plan.[7] Pursuant to the tax-avoidance plan, petitioners and G.A.C. Investments were to enter into certain transactions in an attempt to increase G.A.C. Investments' basis in the rental property. Thereafter, petitioners were to cause G.A.C. Investments to dispose of the rental property in a section 1031 like-kind exchange with boot.

If petitioners had known that the tax-avoidance plan was an abusive tax shelter, they would not have implemented it in an attempt to increase G.A.C.

---

[6]Oregon in fact waived all penalties payable by petitioners.

[7]Pursuant to petitioners' fee agreement, petitioners paid to Fischer Hayes $5,000 ($5,000 payment) in 2002 and $40,000 in 2003 in two installments of $15,000 ($15,000 payment) and $25,000 ($25,000 payment).

[*5] Investments' basis in the rental property and would not have caused G.A.C. Investments to dispose of the rental property in a section 1031 like-kind exchange with boot. Instead, petitioners would have caused G.A.C. Investments to dispose of the rental property and defer tax on any gain realized on that disposition by implementing only a section 1031 like-kind exchange without boot, as had been done before. Indeed, petitioners had adopted a plan (petitioners' plan) to maximize and accumulate wealth during their lives in order to provide for their permanently disabled adult daughter both during their lives and after their deaths. Pursuant to that plan, petitioners had on at least two occasions before the disposition of the rental property caused the dispositions of certain appreciated residential rental properties in section 1031 like-kind exchanges without boot. After the disposition of the rental property, petitioners caused the disposition of a certain appreciated income-producing commercial property that had been received in exchange for the rental property in a section 1031 like-kind exchange without boot. Pursuant to petitioners' plan, petitioners intended to continue to defer indefinitely tax on any gain realized on the dispositions of appreciated properties by implementing section 1031 like-kind exchanges without boot.

G.A.C. Investments filed Form 1065, U.S. Return of Partnership Income (Form 1065), for each of the periods (1) that began on January 1, 2002, and that

[*6] ended on July 26, 2002[8] (G.A.C. Investments' July 26, 2002 Form 1065), and (2) that began on July 27, 2002, and that ended on December 31, 2002 (G.A.C. Investments' December 31, 2002 Form 1065).[9] In G.A.C. Investments' July 26, 2002 Form 1065, that company claimed, inter alia, (1) a deduction of $5,000 for "legal and professional fees" paid to Fischer Hayes[10] and (2) a short-term capital loss of $9,151 that it incurred (G.A.C. Investments' 2002 short-term capital loss) in connection with the implementation of the tax-avoidance plan.

Cosentino Estates filed Form 1065 for its taxable year 2002 (Cosentino Estates' 2002 Form 1065).[11]

---

[8]The implementation of the tax-avoidance plan triggered on July 26, 2002, a so-called technical termination of G.A.C. Investments under sec. 708(b)(1)(B). As a result, pursuant to sec. 706(c)(1), G.A.C. Investments' taxable year ended on July 26, 2002.

[9]The record does not contain G.A.C. Investments' July 26, 2002 Form 1065 or G.A.C. Investments' December 31, 2002 Form 1065. Nor does the record contain any State income tax returns (State returns) that G.A.C. Investments may have filed for the periods (1) that began on January 1, 2002, and that ended on July 26, 2002, and (2) that began on July 27, 2002, and that ended on December 31, 2002.

[10]See supra note 7. It is unclear why G.A.C. Investments claimed in G.A.C. Investments' July 26, 2002 Form 1065 a deduction of $5,000 for "legal and professional fees" paid to Fischer Hayes since petitioners, not G.A.C. Investments, made the $5,000 payment to Fischer Hayes.

[11]The record does not contain Cosentino Estates' 2002 Form 1065. Nor does the record contain any State returns that Cosentino Estates may have filed for its taxable year 2002.

**[\*7]**  Petitioners filed a joint tax return for their taxable year 2002 (2002 return). In the 2002 return, petitioners, inter alia, (1) claimed (a) a flowthrough deduction of $5,000 from G.A.C. Investments for "legal and professional fees" paid to Fischer Hayes,[12] (b) a flowthrough short-term capital loss of $9,151 from G.A.C. Investments for G.A.C. Investments' 2002 short-term capital loss, (c) passive income of $35,034 from G.A.C. Investments, (d) a passive loss of $53 from G.A.C. Investments, and (e) a passive loss of $2,612 from Cosentino Estates and (2) reported an overpayment of tax of $3,065.

Petitioners also filed an Oregon income tax return (Oregon return) for their taxable year 2002 (2002 Oregon return).[13]

Pursuant to the tax-avoidance plan, in 2002 petitioners and G.A.C. Investments entered into certain transactions in an attempt to increase G.A.C. Investments' basis in the rental property. On May 7, 2003, G.A.C. Investments disposed of the rental property in a section 1031 like-kind exchange with boot. The gain that otherwise would have been recognized upon disposition of the rental property in return for like-kind property and boot was largely offset by an inflated basis that resulted from the implementation of the tax-avoidance plan.

---

[12]See supra note 10.

[13]The record does not contain the 2002 Oregon return.

[*8]  G.A.C. Investments filed Form 1065 for its taxable year 2003 (G.A.C. Investments' 2003 Form 1065).[14]  In that form, G.A.C. Investments reported "Ordinary income (loss) from trade or business activities" of $38,685.

G.A.C. Investments attached to G.A.C. Investments' 2003 Form 1065 Form 8825, Rental Real Estate Income and Expenses of a Partnership or an S Corporation (Form 8825), with respect to its taxable year 2003 (G.A.C. Investments' 2003 Form 8825).  In G.A.C. Investments' 2003 Form 8825, that company, inter alia, claimed as a rental real estate expense "Legal and other professional fees" of $18,989 with respect to the rental property.  Of that amount, $14,999 was attributable to "Legal and other professional fees" paid to Fischer Hayes.[15]

G.A.C. Investments also attached to G.A.C. Investments' 2003 Form 1065 Form 8824, Like-Kind Exchanges (and section 1043 conflict-of-interest sales) (Form 8824), with respect to the rental property (G.A.C. Investments' 2003 Form 8824).  In G.A.C. Investments' 2003 Form 8824, that company, inter alia, claimed (1) "Cash received, FMV of other property received, plus net liabilities assumed

_____

[14]The record does not contain any State returns that G.A.C. Investments may have filed for its taxable year 2003.

[15]See supra note 7.  It is unclear why G.A.C. Investments claimed as a rental real estate expense in G.A.C. Investments' 2003 Form 8825 "Legal and other professional fees" of $14,999 paid to Fischer Hayes since petitioners, not G.A.C. Investments, made the $15,000 payment to Fischer Hayes.

**[*9]** by other party, reduced (but not below zero) by any exchange expenses you incurred" of $1,980,618; (2) "FMV of like-kind property you received" of $3 million; (3) an adjusted basis in the rental property of $4,802,543; (4) "Realized gain" of $178,075; (5) "Ordinary income under recapture rules" of $38,685; (6) "Recognized gain" of $178,075; and (7) "Deferred gain" of zero.

G.A.C. Investments also attached to G.A.C. Investments' 2003 Form 1065 Form 4797, Sales of Business Property (Form 4797), with respect to the rental property (G.A.C. Investments' 2003 Form 4797). In G.A.C. Investments' 2003 Form 4797, that company reported "Section 1231 gain or (loss) from like-kind exchanges" of $139,390.

Cosentino Estates filed Form 1065 for its taxable year 2003 (Cosentino Estates' 2003 Form 1065).[16] In Cosentino Estates' 2003 Form 1065, that company, inter alia, claimed a deduction of $25,000 for "legal and professional fees" paid to Fischer Hayes.[17]

---

[16]The record does not contain Cosentino Estates' 2003 Form 1065. Nor does the record contain any State returns that Cosentino Estates may have filed for its taxable year 2003.

[17]See supra note 7. It is unclear why Cosentino Estates claimed in Cosentino Estates' 2003 Form 1065 a deduction of $25,000 for "legal and professional fees" paid to Fischer Hayes since petitioners, not Cosentino Estates, made the $25,000 payment to Fischer Hayes.

[*10] Petitioners filed a joint tax return for their taxable year 2003 (2003 return). In the 2003 return, petitioners, inter alia, (1) claimed (a) a flowthrough deduction of $14,999 from G.A.C. Investments for "Legal and other professional fees" paid to Fischer Hayes, (b) a flowthrough deduction of $25,000 from Cosentino Estates for "legal and professional fees" paid to Fischer Hayes,[18] (c) a passive loss of $1,382 from G.A.C. Investments, (d) a passive loss of $92,774 from Cosentino Estates, and (e) gain from the sale of business property of $139,390 and (2) reported an overpayment of tax of $1,475.

Petitioners also filed an Oregon return for their taxable year 2003 (2003 Oregon return).[19]

During 2005, petitioners learned that the tax-avoidance plan constituted an abusive tax shelter. Thereafter, petitioners (1) caused G.A.C. Investments to file amended tax returns for (a) the period that began on January 1, 2002, and that

---

[18]See supra notes 15 and 17.
The parties stipulated that petitioners claimed in their 2003 return deductions totaling $40,000 for payments that they made to Fischer Hayes pursuant to petitioners' fee agreement. That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that petitioners claimed in their 2003 return flowthrough deductions from G.A.C. Investments and Cosentino Estates totaling $39,999 for payments made to Fischer Hayes pursuant to petitioners' fee agreement.

[19]The record does not contain the 2003 Oregon return.

[*11] ended on July 26, 2002,[20] (b) the period that began on July 27, 2002, and

that ended on December 31, 2002,[21] and (c) its taxable year 2003, (2) caused

Cosentino Estates to file an amended tax return for its taxable year 2003,[22] and (3)

filed amended tax returns and amended Oregon returns for their taxable years

2002 and 2003.  As discussed in detail below, in those amended returns G.A.C.

Investments, Cosentino Estates, and petitioners in effect disclaimed the benefits

derived from implementing the tax-avoidance plan.  As a result, petitioners were

required to recognize gain of approximately $1,800,000 from the disposition of the

rental property in addition to the $178,075 that they reported as gain from that

disposition in the 2003 return.

---

[20]See supra note 8.

[21]The record does not contain the amended tax returns that petitioners caused G.A.C. investments to file for (1) the period that began on January 1, 2002, and that ended on July 26, 2002, and (2) the period that began on July 27, 2002, and that ended on December 31, 2002.  Nor does the record contain any amended State returns that G.A.C. Investments may have filed for those respective periods.

[22]Although the record contains the amended tax return that petitioners caused Cosentino Estates to file for its taxable year 2003, the record does not contain Cosentino Estates' 2003 Form 1065 that it originally filed.  Nor does the record contain any amended State returns that Cosentino Estates may have filed for its taxable year 2003.

[*12] During 2005, G.A.C. Investments filed an amended Form 1065 for its taxable year 2003 (G.A.C. Investments' amended 2003 Form 1065).[23] In that form, G.A.C. Investments reported "Ordinary income (loss) from trade or business activities" of $21,021, not $38,685 that it had reported in G.A.C. Investments' 2003 Form 1065.

G.A.C. Investments attached to G.A.C. Investments' amended 2003 Form 1065 an amended Form 8824 with respect to the rental property (G.A.C. Investments' amended 2003 Form 8824). In G.A.C. Investments' amended 2003 Form 8824, that company reported, inter alia, (1) "Cash received, FMV of other property received, plus net liabilities assumed by other party, reduced (but not below zero) by any exchange expenses you incurred" of $1,980,609, not $1,980,618 that it had reported in G.A.C. Investments' 2003 Form 8824; (2) "FMV of like-kind property you received" of $3 million, the same amount that it had reported in G.A.C. Investments' 2003 Form 8824; (3) an adjusted basis in the rental property of $2,593,104, not $4,802,543 that it had reported in G.A.C. Investments' 2003 Form 8824; (4) "Realized gain" of $2,387,505, not $178,075 that it had reported in G.A.C. Investments' 2003 Form 8824; (5) "Ordinary income under recapture

---

[23]The record does not contain any amended State returns that G.A.C. Investments may have filed for its taxable year 2003.

[*13] rules" of $21,021, not $38,685 that it had reported in G.A.C. Investments'

2003 Form 8824; (6) "Recognized gain" of $1,980,609, not $178,075 that it had

reported in G.A.C. Investments' 2003 Form 8824; and (7) "Deferred gain" of

$406,896, not zero that it had reported in G.A.C. Investments' 2003 Form 8824.

G.A.C. Investments also attached to G.A.C. Investments' amended 2003

Form 1065 an amended Form 4797 with respect to the rental property (G.A.C.

Investments' amended 2003 Form 4797). In G.A.C. Investments' amended 2003

Form 4797, that company reported "Section 1231 gain or (loss) from like-kind

exchanges" of $1,959,588, not $139,390 that it had reported in G.A.C. Invest-

ments' 2003 Form 4797.

During 2005, petitioners filed an amended joint tax return for each of their

taxable years 2002 (amended 2002 return) and 2003 (amended 2003 return). In

their amended 2002 return, petitioners, inter alia, (1) claimed (a) passive income of

$35,606 from G.A.C. Investments, not a passive loss of $53 from that company

that they had claimed in the 2002 return, and (b) passive income of $28,049 from

Cosentino Estates, not a passive loss of $2,612 from that company that they had

claimed in the 2002 return, and (2) reported an "Amount you owe" of $4,125, not

an overpayment of tax of $3,065 that they had claimed in the 2002 return. In their

amended 2003 return, petitioners, inter alia, (1) claimed (a) a passive loss of

**[*14]** $1,103 from G.A.C. Investments, not a passive loss of $1,382 from that company that they had claimed in the 2003 return, (b) a passive loss of $79,064 from Cosentino Estates, not a passive loss of $92,774 from that company that they had claimed in the 2003 return, and (c) gain from the sale of business property of $1,959,588, not $139,390 that they had claimed in the 2003 return, and (2) reported an "Amount you owe" of $276,442, not an overpayment of tax of $1,475 that they had reported in the 2003 return. Thereafter in 2005, respondent assessed, and petitioners paid, additional tax of $4,125 and $276,442 for petitioners' taxable years 2002 and 2003, respectively.

During 2005, petitioners also filed an amended Oregon return for each of their taxable years 2002 (amended 2002 Oregon return) and 2003 (amended 2003 Oregon return).[24] Thereafter in 2005, petitioners paid additional Oregon income tax of $2,796 and $165,880 for their taxable years 2002 and 2003, respectively.

Petitioners filed a joint tax return for their taxable year 2005 (2005 return). In the 2005 return, petitioners, inter alia, (1) claimed a deduction for the additional Oregon income tax of $165,880 that they paid in 2005 for their taxable year 2003 and (2) reported an overpayment of tax of $4,320. Petitioners did not claim in

---

[24]The record does not contain the amended 2002 Oregon return or the amended 2003 Oregon return.

[*15] their 2005 return a deduction for the additional Oregon income tax of $2,796

that they paid in 2005 for their taxable year 2002.

On June 9, 2008, respondent issued to petitioners a notice of deficiency

(notice) with respect to their taxable year 2003 (June 9, 2008 notice). In that

notice, respondent determined to disallow the flowthrough deduction of $25,000

from Cosentino Estates for "legal and professional fees" paid to Fischer Hayes that

petitioners claimed in their 2003 return.[25] Petitioners did not file a petition with

the Court with respect to the June 9, 2008 notice.

On March 4, 2009, respondent issued to petitioners a notice with respect to

their taxable years 2002 and 2003 (March 4, 2009 notice).[26] In that notice,

respondent determined, inter alia: "It is determined that your partnership flow

throughs from G.A.C. Investments, LLC * * * and Cosentino Estate, LLC * * * for

claimed deductions for legal and professional fees in the amounts of $5,000 and

[25]Because petitioners and G.A.C. Investments and Cosentino Estates filed respective amended returns in which they in effect disclaimed, as described above, the benefits derived from implementing the tax-avoidance plan, in the June 9, 2008 notice respondent did not make any determinations with respect to the disposition of the rental property.

[26]Because petitioners did not file a petition with the Court with respect to the June 9, 2008 notice, sec. 6212(c)(1) did not bar respondent from issuing to petitioners a second notice, i.e., the March 4, 2009 notice, with respect to their taxable year 2003.

[*16] $14,999 for the tax years ending December 31, 2002 and December 31, 2003, respectively, in arriving at your net loss from rental real estate activities, are not allowable."[27]  Petitioners did not file a petition with the Court with respect to the March 4, 2009 notice.

As discussed above, in 2007 petitioners settled for $375,000 the lawsuit that they commenced in 2006 after they learned in 2005 that the tax-avoidance plan was an abusive tax shelter.  Pursuant to the settlement agreement (settlement agreement) that petitioners and the defendants signed on November 16 and December 11, 2007, respectively, petitioners received the $375,000 payment in settlement of their claims for the damages that they alleged in the complaint.  The settlement agreement provided in pertinent part as follows:

## I.  FACTS

> Garey A. Cosentino, Jo-Ann Cosentino, G.A.C. Investments, LLC and Cosentino Estates, LLC, herein after the "Plaintiffs", claim to have suffered certain damages and injuries as a result of professional services and/or advice rendered by * * * [the defendants] * * *. These allegations and claims are more fully defined in the lawsuit filed by Plaintiffs in the Circuit Court of the S[t]ate of Oregon, for the County of Marion, case no. 06C-11026.  Plaintiffs and Defendants (the settling parties) hereby wish to settle the lawsuit.

---

[27]See supra note 25.

[*17]     II. COMPROMISE SETTLEMENT FULL AND FINAL

In consideration of the payment set forth below, the plaintiffs hereby agree to release * * * [the defendants], their agents, employees, principals, directors, members, insurers and attorneys from all past, present and future claims, demands and claims for relief, including all expenses, costs and attorneys' fees, and for damages of every kind of whatsoever nature or basis, known as well as unknown, anticipated or unanticipated, arising out of, related to or in any way caused by the facts and circumstances alleged in the lawsuit.  The settling parties intend this agreement to be a full and final, complete settlement, adjustment and compromise of any and all claims based upon the allegations contained in the lawsuit or which could have been brought under the facts alleged in the lawsuit, including all crossclaims, counterclaims, claims for indemnity and contribution and related insurance coverage claims.  It is expressly understood by all parties to this agreement that the agreement is intended to cover and does cover not only known losses and damages, but also further or future losses and damages not now known or anticipated, but which may later develop or be discovered and which arise from the same factual circumstances and nexus as alleged in the lawsuit.  This expressly includes but is not limited to any fines, penalties, interest, back taxes, present taxes or loss of income.

Plaintiffs warrant and agree that they will not take or participate in any further actions against Defendants as to the matters alleged in their lawsuit before any other body or proceeding except to the extent that they may be so compelled to under law.

III.  PAYMENT

Defendants hereby agreed to make, by and through their insurer, payment to the plaintiff in the [amount of] Three Hundred and Seventy Five Thousand Dollars and 00/100 ($375,000.00).  The parties agree that the check shall be made out to plaintiffs' counsel's trust account and shall be deposited therein with plaintiff being

[*18]  responsible for any and all disbursements therefrom to plaintiff and lien holders.

Petitioners filed a joint tax return for their taxable year 2007.  They did not include in income in that return the $375,000 payment that they received in settlement of the lawsuit.

Respondent issued to petitioners a notice with respect to their taxable year 2007 (2007 notice).  In that notice, respondent determined, inter alia:  "It is determined that the $375,000 received as an award resulting from a lawsuit during the tax year 2007 was not reported on your return.  All awards received are taxable unless specifically excluded by law.  Since this amount is not excludable it is taxable.  Accordingly, your taxable income is increased by $375,000."[28]

## OPINION

The only issue remaining for decision is whether, as respondent determined in the 2007 notice, the $375,000 payment is includible in petitioners' income for their taxable year 2007.  Petitioners bear the burden of establishing that that determination is erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

---

[28]Respondent also determined in the 2007 notice that petitioners are liable for their taxable year 2007 for the accuracy-related penalty under sec. 6662(a). The parties filed a stipulation of settled issues in which respondent conceded that petitioners are not liable for that penalty.

**[*19]**  We held in Sager Glove Corp. v. Commissioner, 36 T.C. 1173, 1180 (1961), aff'd, 311 F.2d 210 (7th Cir. 1962), that "[t]he taxability of the proceeds of a lawsuit, or of a sum received in settlement thereof, depends upon the nature of the claim and the actual basis of recovery."  Where the recovery represents damages for lost profits or other items taxed as ordinary income, it is taxable as ordinary income.  See Hort v. Commissioner, 313 U.S. 28, 31 (1941); Sager Glove Corp. v. Commissioner, 36 T.C. at 1180.  Where the recovery represents a replacement of capital destroyed or damaged, it generally does not constitute taxable income to the extent that it does not exceed the basis of the destroyed or damaged property.  See Sager Glove Corp. v. Commissioner, supra.

Whether a payment received in settlement of a claim represents a replacement of capital depends on the nature of the claim that was the actual basis for the settlement.  See Spangler v. Commissioner, 323 F.2d 913, 916 (9th Cir. 1963), aff'g T.C. Memo. 1961-341.

It is petitioners' position that the $375,000 payment represents a replacement of capital and that therefore that payment is not includible in their income for their taxable year 2007.  In support of that position, petitioners rely on Clark v. Commissioner, 40 B.T.A. 333 (1939), and Concord Instruments Corp. v. Commis-

**[\*20]** sioner, T.C. Memo. 1994-248, 1994 WL 232364.  They also rely on Rev.

Rul. 57-47, 1957-1 C.B. 23.[29]

In Clark v. Commissioner, 40 B.T.A. at 334, a married taxpayer had

retained tax counsel to advise him as to whether he and his spouse should file a

joint return or whether they should file separate returns.  The tax counsel advised

the taxpayer to file a joint return with his spouse and thereafter prepared a joint

return for them (taxpayer's joint return) that they filed.  Id.  The Commissioner

commenced an examination of the taxpayer's joint return that was conducted by a

revenue agent.  Id.  During that examination, the revenue agent concluded that the

taxpayer's tax counsel had erroneously deducted in the taxpayer's joint return the

total amount of certain losses, instead of having reduced the total amount of such

losses by applying the limitation imposed by the Revenue Act of 1932, ch. 209,

sec. 101(b), 47 Stat. at 191, and having deducted such reduced amount.  Clark v.

---

[29]Revenue rulings are not regarded as precedent in this Court.  They merely represent the position of the Commissioner of Internal Revenue (Commissioner) on a particular issue.  See Alumax, Inc. v. Commissioner, 109 T.C. 133, 163 n.12 (1997), aff'd, 165 F.3d 822 (11th Cir. 1999).  However, a taxpayer may rely on a revenue ruling that is favorable to the taxpayer.  See Nissho Iwai Am. Corp. v. Commissioner, 89 T.C. 765, 778 (1987).  Thus, we discuss Rev. Rul. 57-47, 1957-1 C.B. 23, because petitioners rely on that revenue ruling, which they believe is favorable to them.

[*21] Commissioner, 40 B.T.A. at 334. As a result, the taxpayer's tax counsel understated the tax shown in the taxpayer's joint return by $32,820.14. Id.

After the taxpayer's tax counsel was made aware of the error that he had made in preparing the taxpayer's joint return, computations were undertaken that showed that if the taxpayer and his spouse had filed separate returns, and not a joint return, their respective tax liabilities as reflected in those separate returns would have been $19,941.10 less than the total tax liability of the taxpayer and his spouse for the joint return that they had filed, as corrected by the revenue agent. Id. The taxpayer's tax counsel admitted that if he had not made the error that he made when he computed the tax liability that he showed in the taxpayer's joint return, he would have advised the taxpayer and his spouse to file separate returns, and not a joint return. Id. The tax counsel reimbursed the taxpayer $19,941.10, which was the amount of additional tax that the taxpayer was required to pay because of the tax counsel's error. Id.

In Clark, the Commissioner argued that the $19,941.10 payment that the tax counsel had paid to the taxpayer because of the tax counsel's error was includible in the taxpayer's income because "this amount constituted taxes paid for * * * [the taxpayer] by a third party". Id. The Board of Tax Appeals (Board) rejected the Commissioner's position and held that that payment was not includible in the

[*22] taxpayer's income because it constituted "compensation for a loss which impaired * * * [the taxpayer's] capital." Id. at 335. In so holding, the Board reasoned:

> When the joint return was filed, * * * [the taxpayer] became obligated to and did pay the taxes computed on that basis. In paying that obligation, he sustained a loss which was caused by the negligence of his tax counsel. The $19,941.10 was paid to * * * [the taxpayer], not *qua* taxes, but as compensation to * * * [the taxpayer] for his loss. The measure of that loss, and the compensation therefor, was the sum of money which * * * [the taxpayer] became legally obligated to and did pay because of that negligence. The fact that such obligation was for taxes is of no moment here.

Id. (citations omitted).

In Concord Instruments, we had issued an Opinion in Concord Control, Inc. v. Commissioner, 78 T.C. 742 (1982), a case involving the taxpayer's predecessor. Concord Instruments Corp. v. Commissioner, 1994 WL 232364, at *23. We had held in Concord Control that the taxpayer's predecessor had acquired a certain amount of nondepreciable going-concern value when it acquired the taxpayer. Id. As a result of that holding, the taxpayer's predecessor was required to reduce the basis of certain depreciable property and consequently the amount of depreciation deducted for that property for each of certain taxable years, which caused its tax liability for each of those years to increase. Id. The taxpayer wanted to appeal the decision entered in Concord Control and instructed its counsel (Concord Instru-

[*23] ments' counsel) to file a notice of appeal.  Id.  Concord Instruments' counsel failed to file timely a notice of appeal.  As a result of our decision in Concord Control, the taxpayer paid a deficiency of $248,864 and accrued interest thereon of $417,366, or a total of $666,230.  Id.

Because Concord Instruments' counsel failed to file timely a notice of appeal from the decision in Concord Control, the taxpayer made a malpractice claim with that counsel's professional liability insurance company (insurance company).  Id.  In the malpractice claim, the taxpayer alleged that Concord Instruments' counsel's failure to file timely a notice of appeal from the decision in Concord Control caused it to pay more tax than it should have paid and that it incurred interest expenses to pay the tax.  Id. at *24.  The taxpayer alleged in the malpractice claim damages totaling $466,034 consisting of a deficiency of $160,020, interest paid to the Commissioner of $265,012, and interest paid to a certain bank of $41,002.[30]  Id. at *23.  The taxpayer had previously deducted the interest paid to the Commissioner of $265,012 and the interest paid to a certain bank of $41,002 that it alleged as damages in the malpractice claim.  Id. at *25.

---

[30]As discussed above, the taxpayer in Concord Instruments Corp. v. Commissioner, T.C. Memo. 1994-248, 1994 WL 232364, paid a deficiency of $248,864 and accrued interest thereon of $417,366.  It is not clear why the malpractice claim was for a deficiency of $160,020, accrued interest thereon of $265,012, and interest paid to a certain bank of $41,002.

[*24] The insurance company settled the taxpayer's malpractice claim by paying it $125,000 (malpractice payment). Id. at *23. The taxpayer did not include that payment in its income. Id.

In Concord Instruments Corp. v. Commissioner, 1994 WL 232364, at *23, the Commissioner took the position that the malpractice payment that the taxpayer received from the insurance company was includible in its income because "petitioner's counsel's conduct did not cause petitioner to owe additional tax." We rejected that position and held that, except for the portion of the malpractice payment that reimbursed the taxpayer for interest paid to the Commissioner of $265,012 and interest paid to a certain bank of $41,002 that the taxpayer had deducted, the malpractice payment "was to compensate petitioner for a loss similar to that in *Clark v. Commissioner*". Id. at *25. As for the portion of the malpractice payment that reimbursed the taxpayer for the interest that the taxpayer had deducted, we held that the taxpayer was required to include that portion in income. Id.

In Rev. Rul. 57-47, supra, the taxpayer's tax consultant prepared and filed the taxpayer's tax return for a certain taxable year in return for which the taxpayer paid the tax consultant a fee that she deducted. That deduction resulted in a reduction of the taxpayer's tax liability for the taxable year for which she claimed the

[*25] deduction. After the period of limitations for recovering any overpayment had expired, the taxpayer became aware that she had in fact overpaid her tax for the year to which the tax return that her tax consultant had prepared pertained. That overpayment had not been claimed in the taxpayer's return because of an error that the taxpayer's consultant had made in preparing that return. In order to compensate the taxpayer for the error in the taxpayer's tax return, the taxpayer's tax consultant made a payment (settlement payment) to the taxpayer. The settlement payment consisted of (1) an amount equal to the difference between (a) the amount of tax that the taxpayer in fact paid and (b) the amount of tax that the taxpayer would have paid if the tax consultant had not erred in preparing the taxpayer's return and (2) an additional amount equal to the sum of (a) 6 percent interest on that difference from the date that the taxpayer paid her tax and (b) the fee that the taxpayer had paid to the tax consultant for the preparation of her return.

The issue that the IRS addressed in Rev. Rul. 57-47, supra, was whether the taxpayer was required to include the settlement payment in income. The Commissioner ruled that under Clark,[31] "no taxable income is derived from that part of the

_____

[31]The IRS had previously issued a nonacquiescence in Clark v. Commissioner, 40 B.T.A. 333 (1939). See 1939-2 C.B. 45. It withdrew its nonacquies-
(continued...)

**[\*26]** recovery received by the taxpayer which does not exceed the amount of tax which she was required to pay because of the error made by her tax consultant". Rev. Rul. 57-47, 1957-1 C.B. at 24. The Commissioner further ruled that the remainder of the recovery that represented interest on the overpayment that the taxpayer had made and the fee that she had paid to her consultant must be included in her income. That was because (1) no provision of the Code excluded from income the interest that the taxpayer had received from her tax consultant and (2) the taxpayer deducted and received a tax benefit for the fee that she had paid to her tax consultant.

Respondent counters petitioners' reliance on Clark, Concord Instruments, and Rev. Rul. 57-47, supra, by arguing that those authorities are materially distinguishable from the instant case and do not control resolution of the issue presented here (respondent's argument).[32] We disagree.

---

[31](...continued)
cence in Rev. Rul. 57-47, 1957-1 C.B. at 24.

[32]According to respondent:

In each of the other cases [i.e., Clark, Concord Instruments, and Rev. Rul. 57-47, supra], the errors made by the taxpayers' return preparers caused (or at least arguably caused, in the case of Concord Instruments, T.C. Memo. 1994-248) the taxpayers to pay **more** than their minimum proper federal income tax liabilities based on the

(continued...)

**[*27]**  On the record before us, we conclude that respondent's argument is factually flawed.  In advancing that argument, respondent ignores certain material facts that we have found.  Petitioners (1) paid more in Federal income tax and State income tax than they would have paid and (2) paid other expenses that they would not have paid if they had not followed the advice of their accountants, Fischer Hayes, and used the tax-avoidance plan that that firm recommended they use.  In reliance on that advice, petitioners implemented the tax-avoidance plan in an attempt to increase G.A.C. Investments' basis in the rental property and caused G.A.C. Investments to dispose of the rental property in a section 1031 like-kind

---

[32](...continued)
underlying transactions for the years in question.

     In this case, one of the underlying transactions for tax years 2002 and 2003 was the sale of petitioners' real property in tax year 2003, which gave rise to a capital gain.  The petitioners certainly did not pay any amount in excess of their minimum proper tax liabilities given this property sale--instead, the error of Fischer Hayes related to presenting to petitioners the option of participating in an abusive tax shelter to illegally minimize capital gains tax.  By engaging in the abusive transaction, petitioners paid **less** than their minimum proper federal tax liabilities for tax years 2002 and 2003.  Once they filed their amended returns, the subsequent payment of the tax reflected on those returns constituted petitioners' payment of their minimum proper federal tax liabilities.  Given this sale of real property, petitioners never paid anything more than their minimum proper federal tax liabilities--the later payments were only making up the difference between the incorrect, underreported amount and their minimum proper income tax liabilities for tax years 2002 and 2003.

[*28] exchange with boot. Petitioners did not know at the time that they implemented the tax-avoidance plan that it was an abusive tax shelter. If petitioners had known that the tax-avoidance plan was an abusive tax shelter, they would not have implemented it in an attempt to increase G.A.C. Investments' basis in the rental property and would not have caused G.A.C. Investments to dispose of the rental property in a section 1031 like-kind exchange with boot. Instead, petitioners would have caused G.A.C. Investments to dispose of the rental property and defer tax on any gain realized on that disposition by implementing only a section 1031 like-kind exchange without boot, as had been done before. Indeed, petitioners had adopted a plan to maximize and accumulate wealth during their lives in order to provide for their permanently disabled adult daughter both during their lives and after their deaths. Pursuant to petitioners' plan, petitioners had on at least two occasions before the disposition of the rental property caused the dispositions of certain appreciated residential rental properties in section 1031 like-kind exchanges without boot. After the disposition of the rental property, petitioners caused the disposition of a certain appreciated income-producing commercial property that had been received in exchange for the rental property in a section 1031 like-kind exchange without boot. Pursuant to petitioners' plan, petitioners intended to continue to defer indefinitely tax on any gain realized on the disposi-

[*29] tions of appreciated properties by implementing section 1031 like-kind exchanges without boot.

After petitioners learned during 2005 that the tax-avoidance plan constituted an abusive tax shelter, they (1) caused G.A.C. Investments to file amended tax returns for (a) the period that began on January 1, 2002, and that ended on July 26, 2002, (b) the period that began on July 27, 2002, and that ended on December 31, 2002, and (c) its taxable year 2003, (2) caused Cosentino Estates to file an amended tax return for its taxable year 2003, and (3) filed amended tax returns and amended Oregon returns for their taxable years 2002 and 2003. In those amended returns, G.A.C. Investments, Cosentino Estates, and petitioners in effect disclaimed the benefits derived from implementing the tax-avoidance plan. Petitioners subsequently paid pursuant to those amended returns, inter alia, additional tax of $4,125 and $276,442 for their taxable years 2002 and 2003, respectively.

During 2005, petitioners also filed an amended 2002 Oregon return and an amended 2003 Oregon return. Thereafter in 2005, petitioners paid additional Oregon income tax of $2,796 and $165,880 for their taxable years 2002 and 2003, respectively.

**[*30]** If petitioners had not followed the accountants' advice by implementing the tax-avoidance plan,[33] petitioners would have caused G.A.C. Investments to dispose of the rental property by implementing only a section 1031 like-kind exchange without boot, thereby deferring tax on any gain realized on the disposition of that property. In that event, petitioners would not have been required to pay for their taxable years 2002 and 2003 the respective additional amounts of Federal income tax and State income tax that they were required to pay for those taxable years after they discovered that the tax-avoidance plan was an abusive tax shelter and filed and caused to be filed amended returns that in effect disclaimed the benefits derived from implementing that plan.

Moreover, under petitioners' plan, we believe that the respective amounts of Federal income tax and State income tax that would have been deferred if the rental property had been disposed of pursuant to that plan by implementing only a section 1031 like-kind exchange without boot would in all likelihood never have been required to be paid. That is because under petitioners' plan petitioners intended to defer indefinitely tax on any gain realized on the dispositions of appreciated properties by implementing section 1031 like-kind exchanges without

---

[33]We have found that if petitioners had known that the tax-avoidance plan was an abusive tax shelter, they would not have implemented it.

**[\*31]** boot. As a result, any appreciated property that they owned at their deaths would have passed to or for the benefit of their permanently disabled adult daughter with a so-called stepped-up basis determined pursuant to section 1014(a).

On the record before us, we find that <u>Clark</u>, <u>Concord Instruments</u>, and Rev. Rul. 57-47, <u>supra</u>, are not materially distinguishable from the instant case.

We conclude that respondent's argument that <u>Clark</u>, <u>Concord Instruments</u>, and Rev. Rul. 57-47, <u>supra</u>, do not control resolution of the issue presented here is not only factually flawed, it also is legally flawed. Those authorities establish that an amount paid to a taxpayer in order to compensate the taxpayer for a loss that the taxpayer suffered because of the erroneous advice of the taxpayer's tax consultant generally is a return of capital and is not includible in the taxpayer's income. <u>See</u> <u>Clark v. Commissioner</u>, 40 B.T.A. at 335; <u>Concord Instruments Corp. v. Commissioner</u>, 1994 WL 232364, at \*24; Rev. Rul. 57-47, <u>supra</u>.

An exception to the general rule established in <u>Clark</u>, <u>Concord Instruments</u>, and Rev. Rul. 57-47, <u>supra</u>, is set forth in <u>Concord Instruments Corp. v. Commissioner</u>, 1994 WL 232364, at \*25, and Rev. Rul. 57-47, <u>supra</u>. That exception is that, under the so-called tax benefit rule, an amount paid to a taxpayer in order to compensate the taxpayer for a loss that the taxpayer suffered because of the erroneous advice of the taxpayer's tax consultant is includible in the taxpayer's

[*32] income to the extent that it compensates the taxpayer for amounts that the taxpayer had deducted.  See Hillsboro Nat'l Bank v. Commissioner, 460 U.S. 370, 383-384 (1983).

Another exception to the general rule established in Clark, Concord Instruments, and Rev. Rul. 57-47, supra, is that any amount of damages paid to a taxpayer to compensate for a loss that the taxpayer claimed to have suffered because of the erroneous advice of the taxpayer's tax consultant is includible in the taxpayer's income to the extent any such amount is for a loss which the taxpayer in fact did not incur or incurred in an amount that is less than the amount that the taxpayer claimed.

Pursuant to the settlement agreement that petitioners and the defendants signed in settlement of the lawsuit, petitioners received the $375,000 payment in settlement of their claims for the various types of damages that they alleged in the complaint.  In the complaint, petitioners alleged that the accountants were negligent and breached their fiduciary duties to petitioners by advising them to use the tax-avoidance plan in order to dispose of the rental property.  Petitioners alleged in the complaint the following damages totaling $640,749.80:

    a.    Fees paid to Fischer, Hayes and Associates, P.C. * * * of $45,000;

**[\*33]**     b.     Costs and losses incurred in connection with the sale and purchase of the Treasury Bonds in the amount of $9,151;

     c.     Federal and states income taxes paid including lost opportunity to use legitimate tax deferral methods under Section 1031 in the total amount of $456,930;

     d.     Interest payable to the Internal Revenue Service in the amount of $18,783.59 and accruing;

     e.     Penalties payable to the Internal Revenue Service in the estimated amount of $89,925;

     f.     Interest payable to the State of Oregon in the amount of $12,666.21 and accruing plus additional interest for year 2002 in an amount to be determined; and

     g.     Penalties payable to the State of Oregon in the amount of $8,294.00, plus additional tax shelter penalties, and penalties for year 2002 in an amount to be determined.

All of the damages that petitioners alleged in the complaint were damages that they sought in order to compensate themselves for the loss that they suffered because the accountants were negligent and breached their fiduciary duties to petitioners by erroneously advising them to use the tax-avoidance plan in order to dispose of the rental property.  The $375,000 payment that petitioners received in settlement of the lawsuit was to compensate them for a loss that is similar to the respective losses in <u>Clark</u>, <u>Concord Instruments</u>, and Rev. Rul. 57-47, <u>supra</u>.

[*34] On the record before us, we hold that the $375,000 payment is not includible in petitioners' income except for the respective amounts of that payment that they received for (1) certain damages which they claimed in the complaint and for which they were compensated but for which they had claimed deductions that respondent did not disallow (exception 1) and (2) certain damages which they claimed in the complaint and for which they were compensated but which they in fact did not incur or incurred in amounts that were less than the amounts of those damages that they alleged in the complaint (exception 2).

The total amount of damages that petitioners alleged in the complaint is greater than the $375,000 payment that they received in settlement of their claims for those damages. We thus must determine how to allocate the $375,000 payment among the types of damages that petitioners claimed in order to ascertain the amount of the $375,000 payment that is allocable to each such type of damages.

We conclude that the $375,000 payment must be allocated ratably among the various types of damages that petitioners alleged in the complaint. See Concord Instruments Corp. v. Commissioner, 1994 WL 232364, at *25. Accordingly, the portion of the $375,000 payment that petitioners received in settlement of their claim for each type of damages that they alleged in the complaint is equal to the total amount of that payment multiplied by a fraction, the numerator of

**[\*35]** which is equal to the amount of each such type of damages that petitioners alleged in the complaint and the denominator of which is equal to the total amount of all types of damages that they alleged in the complaint.[34]

With respect to exception 1 (discussed above) to the general rule established by <u>Clark</u>, <u>Concord Instruments</u>, and Rev. Rul. 57-47, <u>supra</u>, petitioners alleged in the complaint damages for "Costs and losses incurred in connection with the sale and purchase of the Treasury Bonds in the amount of $9,151". That claim was for a short-term capital loss of $9,151 that flowed through to petitioners from G.A.C. Investments and that was attributable to G.A.C. Investments' claimed 2002 short-term capital loss. Petitioners had claimed in their 2002 return a deduction for that flowthrough short-term capital loss, which respondent did not disallow. Any amount that petitioners received in settlement of the damages that petitioners claimed in the complaint for the flowthrough short-term capital loss of $9,151 from G.A.C. Investments reimbursed them for a loss that they had claimed as a

---

[34]The parties shall make the required calculations in their computations under Rule 155 (Rule 155 computations). For purposes of calculating the portion of the $375,000 payment that petitioners received in settlement of each type of damages that they alleged in the complaint, the parties shall adjust in those Rule 155 computations the amount of damages that petitioners claimed in the complaint for "Federal and states income taxes paid including lost opportunity to use legitimate tax deferral methods under Section 1031" and the total amount of damages claimed in the complaint in order to account for the mathematical error that petitioners appear to have made in the complaint. See <u>supra</u> note 4.

**[\*36]** deduction, which respondent did not disallow. We hold that any such amount is includible in petitioners' income.[35]

With respect to exception 1 (discussed above) to the general rule established by Clark, Concord Instruments, and Rev. Rul. 57-47, supra, petitioners also alleged in the complaint damages for "Federal and states income taxes paid including lost opportunity to use legitimate tax deferral methods under Section 1031 in the total amount of $456,930". A portion of those alleged damages, i.e., $165,880, was for additional Oregon income tax which petitioners had paid in 2005 for their taxable year 2003 and for which they had claimed a deduction in their 2005 return, which respondent did not disallow. Any amount that petitioners received in settlement of the damages that petitioners claimed in the complaint for the $165,880 of additional Oregon income tax reimbursed them for a loss that they had claimed as a deduction, which respondent did not disallow. We hold that any such amount is includible in petitioners' income.[36]

---

[35]In the parties' Rule 155 computations, they shall calculate the amount that is includible in petitioners' income as follows: The amount includible in petitioners' income is the ratable amount of the $375,000 payment that is determined to be allocable to the damages that petitioners alleged in the complaint for "Costs and losses incurred in connection with the sale and purchase of the Treasury Bonds in the amount of $9,151".

[36]In the parties' Rule 155 computations, they shall calculate the amount that
(continued...)

**[\*37]**  With respect to exception 2 (discussed above) to the general rule estab-

lished by <u>Clark</u>, <u>Concord Instruments</u>, and Rev. Rul. 57-47, <u>supra</u>, petitioners

alleged in the complaint damages for "Penalties payable to the Internal Revenue

Service in the estimated amount of $89,925".  Petitioners concede on brief that

they in fact paid penalties to the IRS totaling only $57,620.  Any amount that

petitioners received in settlement of their claim for damages for "Penalties payable

to the Internal Revenue Service in the estimated amount of $89,925" compensated

them in part for a loss that they in fact did not incur.  We hold that any such

amount is includible in petitioners' income.[37]

---

[36](...continued)
is includible in petitioners' income as follows:  The amount includible in petition-
ers' income is the ratable amount of the $375,000 payment that is determined to be
allocable to the damages that petitioners alleged in the complaint for "Federal and
states income taxes paid including lost opportunity to use legitimate tax deferral
methods under Section 1031 in the total amount of $456,930" multiplied by a
fraction, the numerator of which is $165,880 (i.e., the amount of the deduction that
petitioners claimed in their 2005 return for additional Oregon income tax that
petitioners paid during their taxable year 2005 for their taxable year 2003, which
respondent did not disallow) and the denominator of which is $449,243.  See <u>supra</u>
notes 4 and 34.

[37]In the parties' Rule 155 computations, they shall calculate the amount that
is includible in petitioners' income as follows:  The amount includible in petition-
ers' income is the ratable amount of the $375,000 payment that is determined to be
allocable to the damages that petitioners alleged in the complaint for "Penalties
payable to the Internal Revenue Service in the estimated amount of $89,925"
multiplied by a fraction, the numerator of which is $32,305 (i.e., the difference

(continued...)

**[\*38]**  With respect to exception 2 (discussed above) to the general rule established by Clark, Concord Instruments, and Rev. Rul. 57-47, supra, petitioners also alleged in the complaint damages for "Penalties payable to the State of Oregon in the amount of $8,294.00, plus additional tax shelter penalties, and penalties for year 2002 in an amount to be determined".  Oregon in fact waived all penalties that were payable by petitioners.  Any amount that petitioners received in settlement of their claim for damages for "Penalties payable to the State of Oregon in the amount of $8,294.00, plus additional tax shelter penalties, and penalties for year 2002 in an amount to be determined" compensated them for a loss that they in fact did not incur.  We hold that any such amount is includible in petitioners' income.[38]

---

[37](...continued)
between the estimated amount of damages of $89,925 alleged in the complaint for penalties payable to the IRS and the amount of such damages that petitioners in fact incurred of $57,620) and the denominator of which is $89,925.

[38]In the parties' Rule 155 computations, they shall calculate the amount that is includible in petitioners' income as follows:  The amount includible in petitioners' income is the ratable amount of the $375,000 payment that is determined to be allocable to the damages that petitioners alleged in the complaint for "Penalties payable to the State of Oregon in the amount of $8,294.00, plus additional tax shelter penalties, and penalties for year 2002 in an amount to be determined".

**[*39]** We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[39]

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[39]One of the arguments that we have considered and rejected is petitioners' argument that "no tax benefit was generated by at least $138,515" of the deduction that they had claimed in their 2005 return for the $165,880 that they paid during their taxable year 2005 for their taxable year 2003. On the record before us, we find that petitioners have failed to carry their burden of establishing that "no tax benefit was generated by at least $138,515" of the $165,880 deduction that they had claimed in their 2005 return.