T.C. Memo. 2021-18

UNITED STATES TAX COURT

DEBRA JEAN BLUM, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20020-17.                    Filed February 18, 2021.

<u>Sarah N. Cuellar</u> and <u>Christopher S. Crago</u>, for petitioner.

<u>Ara Derhartonian</u> and <u>Melissa D. Lang</u>, for respondent.

MEMORANDUM OPINION

URDA, <u>Judge</u>:  Petitioner, Debra Jean Blum, received a payment of

$125,000 in 2015 in settlement of a lawsuit she had filed against lawyers who had

previously represented her in an unsuccessful personal injury lawsuit.  She did not

report this amount on her 2015 Federal income tax return, and the Internal

**[\*2]** Revenue Service (IRS) subsequently determined a deficiency of $27,418 in her 2015 Federal income tax as well as an accuracy-related penalty under section 6662(a) of $5,484.[1] Respondent has conceded the penalty, leaving before us only the question whether Ms. Blum was entitled to exclude from her gross income the $125,000 settlement payment as damages received "on account of personal physical injuries or physical sickness" under section 104(a)(2). We conclude that the settlement payment does not so qualify and will sustain the deficiency determination.

## Background

The parties have submitted this case for decision without trial under Rule 122. All relevant facts have been stipulated or are otherwise included in the record. See Rule 122(a). Ms. Blum resided in the State of Washington when she timely filed her petition.

A.     Ms. Blum's Lawsuit Against the Hospital

In August 2007 Ms. Blum was admitted to Our Lady of Lourdes Hospital in Pasco d.b.a. Lourdes Health Network (hospital) for total left knee replacement

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

[*3] surgery.  While there, Ms. Blum allegedly suffered personal injuries after being directed by an admissions clerk to sit in a wheelchair, which turned out to be broken.  When Ms. Blum attempted to sit in the wheelchair, she allegedly fell on the floor and sustained significant injuries.

In March 2008 Ms. Blum retained an attorney to represent her in a suit against the hospital.  The attorney filed a complaint in July 2010 in Washington State court, alleging that the hospital:  (1) "was negligent in its care, moving, transportation and treatment of * * * [Ms. Blum] causing her to fall and sustain severe injuries" and (2) "failed to properly direct, supervise and prevent the contact of its other agents and employees * * * and was therefore negligent."

While the lawsuit was pending, Ms. Blum's attorney retired from the practice of law and withdrew as her attorney of record.  Ms. Blum retained another attorney from the same law firm to continue the representation.  In September 2011, however, the trial court granted summary judgment to the hospital.  Ms. Blum appealed the case pro se, but the Washington State Court of Appeals affirmed the trial court's decision.

B.    Ms. Blum's Lawsuit Against Her Former Attorneys

In June 2014 Ms. Blum brought a malpractice suit against her former attorneys in Washington State court, alleging that they had breached their duty of

[*4] care in failing to properly prosecute her lawsuit against the hospital. In her complaint Ms. Blum alleged that her physical injuries were caused "solely by the negligence and/or fault of * * * [the hospital] and its employees" and that she "would have prevailed in * * * [her claim against the hospital] but for * * * [her former attorneys'] breach of the standard of care." In her prayer for relief Ms. Blum asserted that her former attorneys' representation "fell below the standard of care expected of a Washington attorney" and that she "sustained damage because of * * * [their] breaches of the standard of care." She did not allege in her complaint that she had suffered any physical injuries for which her former attorneys should be responsible, nor did she seek compensation for any physical injuries.

The parties settled the malpractice lawsuit in June 2015 with Ms. Blum agreeing to drop any and all claims against her former attorneys "related to or arising out of * * * [their] representation of Blum in * * * [her claim against the hospital]" in exchange for a payment of $125,000. The parties' settlement agreement expressly stated that it was "entered into by the Parties for the purpose of compromising and settling the dispute between them", which the agreement described as a "malpractice claim". The settlement agreement further provided that "Blum maintains, and * * * [her former attorneys] do not dispute, that Blum

[*5] did not sustain any physical injuries as a result of the alleged negligence of either * * * [of her former attorneys]" and that "Blum's physical injuries are * * * alleged to have resulted from the * * * [hospital] incident, which did not occur as a result of any fault or negligence by * * * [her former attorneys]".

C.     IRS Examination and Notice of Deficiency

Later in 2015 Ms. Blum received a payment of $125,000 pursuant to the settlement agreement, which she did not report on her 2015 Federal income tax return. The IRS thereafter received Form 1099-MISC, Miscellaneous Income, from the former attorneys' liability insurance company, which reported a payment of $125,000 to Ms. Blum during 2015.

The IRS subsequently selected Ms. Blum's 2015 return for examination, determined that the $125,000 payment should have been included in gross income, and made corresponding computational adjustments. On June 26, 2017, the IRS issued Ms. Blum a notice of deficiency for her 2015 tax year determining a deficiency of $27,418 and an accuracy-related penalty of $5,484 for an underpayment attributable to a substantial understatement of income tax.

**[*6]**                           <u>Discussion</u>

I.     <u>Burden of Proof</u>

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  <u>See</u> Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>Merkel v. Commissioner</u>, 192 F.3d 844, 852 (9th Cir. 1999), <u>aff'g</u> 109 T.C. 463 (1997).  In cases involving failure to report income, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would ordinarily lie, <u>see</u> sec. 7482(b)(1)(A), has held that the Commissioner must establish "some evidentiary foundation" linking the taxpayer to an alleged income-producing activity before the presumption of correctness attaches to the deficiency determination, <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361-362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977).  Once the Commissioner has established such a foundation, the burden of proof shifts to the taxpayer to prove that she is entitled to an exclusion from gross income.  <u>See</u> <u>Simpson v. Commissioner</u>, 141 T.C. 331, 338-339 (2013), <u>aff'd</u>, 668 F. App'x 241 (9th Cir. 2016).  Ms. Blum has not contended and the record does not show that the burden of proof should shift to respondent under section 7491(a).  In any event, the burden of proof does not affect our analysis

**[\*7]** because the parties have agreed on all relevant facts.  See, e.g., Nis Family Tr. v. Commissioner, 115 T.C. 523, 538 (2000).

II.   Analysis

A.    Legal Background

Gross income includes all income from whatever source derived.  See sec. 61(a); see also Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940).  Exclusions from gross income "must be narrowly construed".  Commissioner v. Schleier, 515 U.S. 323, 328 (1995) (quoting United States v. Burke, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment)).

Settlement proceeds constitute gross income unless the taxpayer proves that they fall within a specific statutory exception.  See id. at 328-337; Save v. Commissioner, T.C. Memo. 2009-209, 2009 WL 2950838, at *1.  Section 104(a)(2) supplies one such exception, excluding from gross income "any damages (other than punitive damages) received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness".

"For a taxpayer to fall within this exclusion, he must show that there is 'a direct causal link between the damages and the personal injuries sustained.'" Doyle v. Commissioner, T.C. Memo. 2019-8, at *11 (quoting Rivera v. Baker W.,

**[*8]** Inc., 430 F.3d 1253, 1257 (9th Cir. 2005)).  When damages are received

pursuant to a settlement agreement, the nature of the claim that was the actual basis

for the settlement controls whether the damages are excludable under section

104(a)(2).  See Burke, 504 U.S. at 237; see also Bagley v. Commissioner, 105 T.C.

396, 406 (1995) ("[T]he critical question is, in lieu of what was the settlement

amount paid[?]"), aff'd, 121 F.3d 393 (8th Cir. 1997); Smith v. Commissioner,

T.C. Memo. 2018-127, at *18, aff'd without published opinion, 2020 WL 8368297

(D.C. Cir. 2020).

The nature of the claim is typically determined by reference to the terms of

the agreement.  See Rivera, 430 F.3d at 1257 ("Thus, when damages are paid

through a settlement agreement, we will look first to the underlying agreement to

determine whether it expressly states that the damages compensate for 'personal

physical injuries or physical sickness' under § 104(a)(2)."); Ghadiri-Asli v.

Commissioner, T.C. Memo. 2019-142, at *38.  If an agreement fails to answer the

question, we look primarily to "the intent of the payor".  Devine v. Commissioner,

T.C. Memo. 2017-111, at *11 (quoting Longoria v. Commissioner, T.C. Memo.

2009-162, 2009 WL 1905040, at *7); see also Rivera, 430 F.3d at 1257; Knuckles

v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33;

**[\*9]** Ahmed v. Commissioner, T.C. Memo. 2011-295, 2011 WL 6440130, at \*3,

aff'd, 498 F. App'x 919 (11th Cir. 2012).

The intent of the payor may be determined by taking into consideration, inter

alia, the amount paid, the factual circumstances leading to the settlement, and the

allegations in the injured party's complaint. See Green v. Commissioner, 507 F.3d

857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250; see also Rivera, 430 F.3d at

1257; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir.

1987). "[T]he nature of underlying claims cannot be determined from a general

release [of claims] that is broad and inclusive." Ahmed v. Commissioner, 2011

WL 6440130, at \*3.

### B. Ms. Blum's Settlement Payment

We need look no further than the parties' settlement agreement to conclude

that the settlement payment is not excludable under section 104(a)(2). The parties

expressly identified the suit as a "malpractice claim" and specified that they

entered into the agreement "for the purpose of compromising and settling the

disputes". The agreement further emphasized that the settlement did not

compensate for any personal injuries. To the contrary, the agreement provided that

"Blum maintains, and \* \* \* [her former attorneys] do not dispute, that Blum did

not sustain any physical injuries as a result of the alleged negligence of either \* \* \*

**[\*10]** [of her former attorneys]".  And it stated that "Blum's physical injuries are * * * alleged to have resulted from the * * * [hospital] incident, which did <u>not</u> occur as a result of any fault or negligence by * * * [her former attorneys]".  The agreement thus makes clear that the payment was in lieu of damages for legal malpractice and not "on account of personal physical injuries or physical sickness" within the scope of section 104(a)(2).

Ms. Blum counters that the payment was received "on account of personal physical injuries or physical sickness" because "but for" her former attorneys' allegedly negligent representation, she "would have received damages from the hospital * * * [which] would be * * * excludable under section 104(a)(2)."  Both we and the Court of Appeals for the Ninth Circuit have explained, however, that a taxpayer "must show that there is 'a direct causal link between the damages and the personal injuries sustained.'" <u>Doyle v. Commissioner</u>, at \*11 (quoting <u>Rivera</u>, 430 F.3d at 1257).  In the settlement agreement the parties made clear that the amount paid was not directly linked to the personal injuries suffered by Ms. Blum.  According to the settlement agreement the nature of the claim for which Ms. Blum was compensated was legal malpractice, which plainly lies outside the scope of section 104(a)(2).

**[*11]** Ms. Blum further argues that her former attorneys actually intended to compensate her for the physical injuries she allegedly sustained at the hospital. The settlement agreement dooms her contention. Even if we looked outside that agreement, the complaint filed against the former attorneys related only to legal malpractice and described damages stemming from such malpractice. There is simply no support for Ms. Blum's attempt to recharacterize her suit or settlement.

In the alternative Ms. Blum urges this Court to expand the return of capital exclusion to cover this case. Generally, recovery of capital is not income. See United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 98 (1936). Whether a payment received in settlement of a claim represents a replacement of capital depends on the nature of the claim that was the actual basis for the settlement. See Spangler v. Commissioner, 323 F.2d 913, 916 (9th Cir. 1963), aff'g T.C. Memo. 1961-341. We have held previously that "an amount paid to a taxpayer in order to compensate the taxpayer for a loss that the taxpayer suffered because of the erroneous advice of the taxpayer's tax consultant generally is a return of capital and is not includible in the taxpayer's income." Cosentino v. Commissioner, T.C. Memo. 2014-186, at *31; see also Clark v. Commissioner, 40 B.T.A. 333, 335 (1939); Concord Instruments Corp. v. Commissioner, T.C. Memo. 1994-248, 1994 WL 232364, at *24-*25.

**[\*12]** Ms. Blum asserts that the settlement payment here represents a similar return of capital in that it compensated her for a loss that she suffered because of the erroneous advice of her lawyers, viz, the nontaxable amount she would have received had she prevailed in her personal injury lawsuit. Ms. Blum claims that the settlement is an implicit acknowledgement by the attorneys that she would have prevailed in her personal injury lawsuit were it not for their malpractice.

We are not persuaded. As an initial matter, we are not convinced that Ms. Blum experienced a "loss" at all. The purported loss that she claims was the amount that she might have received from winning her personal injury lawsuit, which strikes us as a highly speculative proposition. Moreover, Ms. Blum fails to convince us that the settlement payment was meant to replace this purported loss, rather than for any of the other reasons that might have prompted her former attorneys to settle. In short, we do not view her recovery in the malpractice case as restoring her capital but instead as compensating her for distinct failings by her former lawyers. Consequently, this amount is not a recovery of capital and is includable in her gross income.

**[\*13]** III.    <u>Conclusion</u>

In sum we hold that the settlement payment is not excludable from Ms. Blum's gross income under section 104(a)(2) for tax year 2015.  We accordingly sustain the IRS' deficiency determination.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent as to the deficiency and for</u>

<u>petitioner as to the penalty</u>.